[Civ. No. 14471.   Second Dist., Div. Two.   Nov. 14, 1944.]

A. W. MILLER, Respondent, v. MAURICE LEE et al., Defendants; MYRTLE I. GEORGE et al., Appellants.

A. W. Brunton for Appellants.

Wendell W. McCanles for Respondent.

WOOD (W. J.), J.—In this action for malicious prosecution, which was tried with a jury, plaintiff obtained a judg-

ment in the sum of $5,000 against Maurice Lee, Myrtle I. George, Raleigh George and Richard F. George. The motion of Richard F. George for a new trial was granted and the motion of the other defendants for a new trial was denied upon the remittance by plaintiff of the sum of $2,000, which the court had required as a condition of the denial of the motion. Defendants Myrtle I. George and Raleigh George have appealed from the judgment. Defendant Lee has not appealed.

The litigation arose from the arrest on February 15, 1940, of plaintiff and his incarceration for nine days, under a warrant issued by Frank K. Carrell, a justice of the peace, on charges of the grand theft of an automobile and of the violation of section 504a of the Penal Code, which provides that one is guilty of embezzlement who fraudulently removes or conceals chattels leased to him by an instrument in writing under a contract to purchase. When the action was first called for trial defendants moved the court for judgment on the pleadings, claiming that it affirmatively appeared on the face of the complaint that there was probable cause for the arrest of plaintiff. This motion was granted because the trial court was of the opinion that under the decision of *Wilson* v. *Troy,* 19 Cal.App.2d 156 [64 P.2d 1141], the complaint did not set forth facts sufficient to sustain an action for malicious prosecution, especially with reference to the allegations on the issue of the termination of the criminal proceeding. After the motion for judgment on the pleadings had been granted the Supreme Court of California filed its decision in *Jaffe* v. *Stone,* 18 Cal.2d 146 [114 P.2d 335, 135 A.L.R. 775], and upon reading this decision the trial court concluded that it had erred in granting the motion for judgment on the pleadings. Thereafter, the court granted plaintiff's motion to vacate the order for judgment on the pleadings and for permission to file a second amended complaint. Appeal from this order was prosecuted by defendants and on May 8, 1942, the District Court of Appeal affirmed the order from which the appeal was taken, holding that plaintiff's amended complaint contained sufficient allegations to state a cause of action. (*Miller* v. *Lee,* 52 Cal.App.2d 10 [125 P.2d 627].)

The appealing defendants now contend that the evidence is insufficient to sustain the implied finding of the jury that defendant Lee was acting in the course of his employment

as their agent when he swore to the complaint upon which the warrant of arrest was issued. The evidence on the subject was conflicting and under well established principles it must be viewed by us in the light most favorable to plaintiff, indulging such reasonable inferences in plaintiff's favor as the jury could draw therefrom. Defendant Richard F. George, an attorney at law, was the owner of a lot which was leased by defendant Raleigh George, his son, a used car dealer. Defendant Lee was the agent of Raleigh George in the business of buying and selling cars. He was the agent of defendant Myrtle I. George, Raleigh's mother, in signing sales contracts and collecting payments on the contracts. Lee sold to plaintiff on June 29, 1939, under a conditional sale contract a Plymouth car for the cash purchase price of $145 and took an Essex car in trade for which a credit was to be allowed of $15. A sale contract was prepared showing payments in the aggregate sum of $186.80. Appellants' ledger sheet showed the contract price to be $171.80 and the installment payments were to be in monthly sums of $6.31. The contract was made in the name of defendant Lee but was assigned by him to defendant Myrtle George. Lee testified that he did not own the car that was purchased by plaintiff but that it was owned by Raleigh George. In answer to the question why he signed the sale contract in his own name he answered: "That was the usual way we did those things as agent for Mr. Raleigh George; I usually signed the pink slip and he signed all the other things. I usually signed M. M. Lee as their agent, my contract going to Mrs. George." Myrtle George received payments and gave receipts therefor in her own name. She testified that Lee was the collector. The contract provided that in case of a default in any installment payment the matter of collection could be referred to any person for collection, the purchaser to pay a reasonable collection charge. Lee testified that he was to receive $2.50 for each trip he made to collect from plaintiff. When at a later period he attempted to repossess the car Raleigh George said to plaintiff's wife, "this happens to be my car."

Plaintiff was delinquent on two monthly installments on October 15, 1939, and soon thereafter about midnight Lee pounded on the door of his residence and said to plaintiff: "You are lucky Mr. George doesn't have you arrested." A few days later plaintiff made a payment and signed a new

agreement. At about 9 p. m. on November 15th, Lee called at plaintiff's residence and talked to his thirteen-year-old daughter, who told him that her parents were in Glendale visiting a sick aunt. Although the girl was crying at the time, Lee said, ''you are nothing but a liar like your Dad.'' He also said, ''Well, I am going to wait for your father. If he isn't here in so long I am going down and swear out a warrant for his arrest because he stole my car.'' On her return from Glendale Mrs. Miller called at the residence of Mr. and Mrs. George and paid them $6.00, which was all the money she had. This sum was at first refused because there should be an additional sum of $2.50 for Lee's trip, but the payment was accepted with the statement that the extra thirty-one cents and the $2.50 for Lee's collection trip would be added at the end of the contract. In his wife's presence Richard F. George said to Mrs. Miller, ''I have been very lenient with your husband not having him arrested before.''

Plaintiff went to the residence of the Georges to make a payment on December 12, and while he was there Mrs. Miller drove to a nearby market to get groceries and take the children to a rest room. While she was parked at the market Raleigh George and Lee came up in an automobile. Lee said, ''I am taking the car'' and Mrs. Miller replied, ''I don't believe I have to give it to you.'' Lee then said, ''I am going to Justice Carrell and will have you both locked up for stealing the car.'' Raleigh George then called a police officer, who refused to interfere. George then got in the car and shoved Mrs. Miller out of the driver's seat and drove to Mrs. George's residence, saying, ''This happens to be my car.'' Shortly thereafter and on the same date plaintiff gave Mrs. George $12.62. He was given a receipt in full to January 1, 1940, and was allowed to retain possession of the car. This was the date, December 12, 1939, on which it was later charged that plaintiff was guilty of theft and fraudulent concealment of the car.

Plaintiff lost his job with the Wilmington Boat Works and the family broke up housekeeping. Plaintiff went to live with a brother-in-law, and his wife and the children went to live with her mother. Plaintiff informed defendant of his change of address. On the agreement executed on December 12, plaintiff gave his address as 342½ West 56th Street. This was the correct address where he then kept the car. On December 30th he notified defendants he had moved with

the car to 1015 East 76th Place, where from that time to the date of his arrest he lived with his family. Plaintiff told defendants he could not make the payments but he was not asked to return the car. In February, before plaintiff was arrested, Mrs. Miller called defendants and asked them to get the car. They did so. On February 15, 1940, the criminal complaint was sworn to before the justice of the peace, in which it was stated that the offense had been committed by plaintiff on December 12, 1939.

At the preliminary hearing on the criminal complaint the charge of grand theft was dismissed for insufficiency of the evidence, but plaintiff was bound over to the superior court on the other count. The matter was submitted to the superior court on the transcript of the evidence taken at the preliminary hearing and the court dismissed the action for insufficiency of the evidence.

■ The fact that the sale contract assigned by Lee to Mrs. George contained the words "with recourse," does not prevent a finding by the jury that Lee was in fact the agent of the two appealing defendants. ■ An agency may be proved by circumstantial evidence. (*MacDonnell* v. *California Lands, Inc.,* 15 Cal.2d 344 [101 P.2d 479].)

■ But here we have both direct and circumstantial evidence of Lee's agency and of his authority to follow the course pursued by him in furtherance of his endeavors to collect from plaintiff. The receipt by Lee of $2.50 for each collection visit is wholly inconsistent with the claimed liability under the "recourse" feature of the assignment. In finding that Lee was acting within the scope of his authority in causing plaintiff's arrest the jury doubtless took into consideration the fact that Raleigh George had called a police officer when he forcibly took the car; the fact that Richard F. George in the presence of defendant Myrtle George threatened plaintiff with arrest; and the fact that the appealing defendants furnished Lee with their sale contract and ledger sheet to show to the justice of the peace. In an amendment to the answer to the first amended complaint the appealing defendants stated that on February 10, 1940, and before the commencement of the criminal prosecution they had consulted an attorney at law and had related to him all of the facts of the transaction with plaintiff. The facts set forth in this pleading indicate that said defendants then had in mind the arrest of plaintiff. They alleged in the amendment to the

complaint that "whatever they did in the premises they did in good faith, and without malice, and upon the express advice of said attorney, and upon a full, complete, and truthful statement of the facts in the case, and in no other manner." It is significant that Richard F. George appeared as attorney for Lee in all the proceedings up to the entry of the judgment against Lee, including the former appeal.

In *Diggs* v. *Arnold Bros., Inc.*, 132 Cal.App. 518, 524 [23 P.2d 71], a case involving the sale of an automobile in which a credit man caused the arrest of the plaintiff, the court in holding the employer liable used language which could well be applied to the facts of this case, when it stated that the agent had "adopted the all too common practice of credit men of resorting to the criminal courts to coerce debtors into making further payments."

The appellants may not escape liability under the claim that Lee made a full and fair disclosure of all of the facts to the justice of the peace before the warrant was issued. Whether Lee did in fact make such disclosure was an issue to be determined by the jury. The jury's implied finding on this point adverse to appellants is sustained by the evidence, including the testimony of the justice of the peace, from which the jury could have reasonably concluded that Lee falsely represented to the justice that he was the owner of the automobile; that he falsely stated to the justice that plaintiff had concealed the car; and that he failed to disclose to the justice that on December 12, 1939, plaintiff was not in default in his payments.

There is no merit in the contention of appellants that the jurisdiction of the superior court had terminated before the commencement of the trial which resulted in the verdict for plaintiff. This point was decided adversely to the contention of appellants on the former appeal. In their brief appellants state: "Appellants are aware of the fact that these same contentions were made by them and the other defendants in the instant action in the briefs filed in *Miller* v. *Lee,* 52 Cal.App.2d 10 [125 P.2d 627], but appellants respectfully submit that the opinion in said previous appeal overlooks the fundamental law that the maintenance of established procedure is absolutely necessary to our system of government." The decision in the former appeal is binding at this time and we see no occasion for further discussion on this point.

The court did not err in its rulings on the admission of evidence. Appellants complain particularly of the ruling permitting the introduction in evidence of the amendments to the answer to the first amended complaint, claiming that these amendments were superseded by later pleadings. Appellants testified at the trial that they had had nothing to do with the issuance of the criminal complaint and knew nothing about it. In their verified amendments to the answer to the first amended complaint appellants admitted that they had consulted a lawyer before Lee swore to the criminal complaint, giving him the facts in detail in such manner as to indicate their purpose to have plaintiff arrested. These amendments were clearly admissible not only as containing admissions by appellants but also for the purpose of impeaching their testimony. Neither did the court err in receiving in evidence the ledger sheet furnished to the justice of the peace by appellants. The ledger sheet provided corroborating evidence as to the agency of Lee and the condition of the account which was kept of plaintiff's transactions. The ledger sheet was also admissible to show whether plaintiff had been given credit for the Essex car which he turned in, no credit for this car being shown on the ledger sheet. Lee testified that plaintiff had not been given credit for the $15 allowance on the Essex car. Nor did the court err in receiving evidence showing the financial inability of plaintiff to make his payments. This evidence had a bearing on the intent of plaintiff and it showed the necessity for plaintiff's change of residence and of the location of the car, concerning which appellants were notified. The court did not err in receiving evidence that a report was circulated in the neighborhood where plaintiff lived that plaintiff was a jailbird and had stolen a car. This report was brought home to plaintiff. In an action for malicious prosecution damages may be recovered for injuries to feelings as well as for bodily harm. (*Shatto* v. *Crocker*, 87 Cal. 629 [25 P. 921].) The evidence was admissible, notwithstanding its hearsay nature, as showing the injury which plaintiff had suffered. It has been held that newspaper articles are admissible in an action for malicious prosecution to prove damages. (*Burke* v. *Watts*, 188 Cal. 118 [204 P. 578].)

Appellants assert that plaintiff's counsel was guilty of misconduct in asking defendant Lee if he had not at a time shortly before the arrest of plaintiff caused the arrest

of another man to whom a car had been sold. Plaintiff asserts that this question was asked in good faith and that the court erred in sustaining an objection to it. However, the court promptly instructed the jury that they must not "consider the information conveyed in that question at all." We are satisfied that defendants were not prejudiced by the incident.

Appellants contend that the court in its instructions erroneously left to the determination of the jury the question whether there was probable cause for the arrest of plaintiff. They particularly complain of a lengthy instruction in which the court specifically mentioned the important facts which it was plaintiff's duty to establish in order to obtain a verdict and included in the instruction the statement, "and if you further find and believe from the evidence that the instigation, institution and prosecution of said action on the part of defendants was malicious and without probable cause, then it will be your duty to find the issues in favor of the plaintiff and against the defendants." But the court also instructed the jury that the verdict must be for the defendants if defendant Lee informed the justice of the peace that plaintiff had given defendants the address on 342½ West 56th Street as his address on December 12, 1939, and that defendants had made diligent efforts to find the automobile sold to plaintiff after the giving of said address and could not find the automobile or plaintiff, and if they further found that plaintiff did not live at 342½ West 56th Street on December 12, 1939, and that he never informed defendants of his true address. The court further instructed the jury that plaintiff could not recover if defendant Lee honestly believed that defendant had committed a crime and that he sought the legal advice of the justice of the peace and in good faith fully and fairly disclosed to the justice of the peace all of the information he possessed and was then advised that a crime had been committed.

It is unquestionably the rule that the court must determine as a matter of law what does and what does not constitute probable cause, but it is the function of the jury to determine on conflicting evidence whether or not those facts exist which must be established to constitute want of probable cause. The approved method is for the court to instruct the jury that if they find and determine certain questions of fact properly submitted to them to be true or untrue their verdict must be for the plaintiff, or for the defendant, as the case

may be. In *Scrivani* v. *Dondaro*, 128 Cal. 31 [60 P. 463], the court had before it a question similar to the question being discussed. We quote: ''The jury were instructed that plaintiff, in order to recover, 'has only to show to your satisfaction by a preponderance of the evidence the following: 1. That the prosecution was without probable cause; 2. That the prosecution was malicious; 3. That plaintiff has been damaged thereby. You are the exclusive judges of all the questions of fact.' It is now claimed that this instruction declares 'probable cause' to be a question of fact. This court has repeatedly held that 'probable cause' is a question of law, but that the existence of sufficient facts to constitute probable cause is a question of fact. (*Ball* v. *Rawles*, 93 Cal. 222 [28 P. 937]; 27 Am.St.Rep. 174; *People* v. *Kilvington*, 104 Cal. [86], 91; [37 P. 799]; 43 Am.St.Rep. 73.) The instruction we have quoted is not perfect in form. At the same time we do not consider it seriously objectionable, especially in view of the other instructions given upon the question of probable cause. The jury were told, strictly in accordance with the law, that if they found the evidence disclosed certain facts (naming them), then there was no probable cause for the arrest. Under these circumstances, we cannot be brought to believe that the jury were in any way misled by the instruction heretofore quoted.''

The instruction now before us, like the instruction mentioned in the Scrivani case, is not ''perfect in form.'' But it can be properly stated that here also the instruction is not ''seriously objectionable.'' The jury was told substantially that if the evidence disclosed certain facts, naming them, plaintiff could not recover. We are satisfied that the jury were not misled and that they were in effect told that they were to be the arbiters of questions of fact. There has been no miscarriage of justice.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied December 8, 1944, and appellants' petition for a hearing by the Supreme Court was denied January 11, 1945. Shenk, J., voted for a hearing.