**John WOODS, Plaintiff-Appellant,**

**v.**

**Jessie HARRELL, John Barnett and Luther J. Mowery, Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 16, 1979.

Permission to Appeal Denied by Supreme Court Feb. 25, 1980.

Walter L. Lusk, Chattanooga, for plaintiff-appellant.

Eugene N. Collins, City Atty., W. Lee Maddux and Randall L. Nelson, Sp. Counsel, Chattanooga, for defendants-appellees.

## OPINION

FRANKS, Judge.

This is a suit for damages, by an individual, against three police officers of the City of Chattanooga, based upon alleged false arrest and imprisonment.[1] The trial was before a jury, who returned a verdict for the defendants. Plaintiff's appeal raises as issues the correctness of the instructions to the jury, the refusal of the trial court to charge certain special requested instructions and the court's failure to direct a verdict on behalf of plaintiff.

On February 18, 1975, plaintiff was involved in a motor vehicle accident which was investigated by defendants, Harrell and Barnett. According to the officers, plaintiff was nervous and reluctant to talk and Officer Harrell, by radio to police headquarters, requested that the data on plaintiff's driver's license be submitted to the National Crime Information Center computer bank.[2] The Chattanooga terminal was temporarily inoperable and the officers completed their investigation of the accident and released the parties.

Approximately one hour later, the Chattanooga Police Department received re-

---

1. The complaint is couched in terms of violation of 42 U.S.C., §§ 1983 and 1985. However, at the trial, all parties agreed that the cause should be tried in accordance with State Tort Law principles.

2. The data submitted was:

| Name: | John Woods |
|---|---|
| Date of Birth: | 1/01/52 |
| Race: | Black |
| Sex: | Male |

sponse[3] from NCIC that Barthoomen Woods was wanted in Tucson, Arizona for a robbery committed in 1973. Defendant Harrell requested further information on the Arizona suspect and the response matched the height and weight appearing on plaintiff's driver's license. Based upon this information, the officers proceeded to plaintiff's residence and arrested plaintiff, and transported him to police headquarters.

At police headquarters, defendant Mowery was apprized of the arrest and undertook to obtain additional identification data from Arizona by telephone. While plaintiff was being booked at the police station, his brother and sister-in-law arrived and advised Officer Mowery that plaintiff was employed by the City of Chattanooga and had previously resided in New York and the Virgin Islands and had never been in Arizona. Since the brother had entered through an unauthorized entrance and was, according to the officer, creating a disturbance, the relatives were ordered to leave.

The following morning plaintiff was taken before a committing magistrate; no hearing was conducted other than setting a bond of $10,000.00. Prior to the appearance before the magistrate, Officer Mowery prepared a state fugitive warrant,[4] which was executed by the magistrate. The hearing was continued until February 26th, and on February 25th the Chattanooga Police Department received a report that Arizona would not extradite due to the unavailability of witnesses. Officer Mowery then contacted the committing magistrate and was given verbal permission to release plaintiff, who was released on the evening of February 25, 1975.

> Plaintiff's complaint charges the officers:
> [A]cting together in a common enterprise, did not act in a prudent and reasonable manner and use ordinary care in ascertaining that the right person was being arrested. Said defendants are an-

swerable for any of the injuries done by any of them, including the false arrest and false imprisonment.

Defendants answered and raised as an affirmative defense they acted with probable cause in making the arrest and joined issue on the negligence issue in the following manner:

> Defendants . . . would show . . [they] acted in a prudent and reasonable manner and exercised at least ordinary care, if not more, in ascertaining that the right person was being arrested.

Plaintiff established at trial that Officers Harrell and Barnett were told by him at the time of arrest he was the wrong man and that he worked for the City of Chattanooga; he furnished his social security number, his correct date of birth and his place of employment, the City of Chattanooga. It was also established that the City of Chattanooga had an employment application on file, giving the plaintiff's age, date of birth, social security number, brother's name (where he resided for five years), name of his grammar school, his high school, his last three employers and three personal references.

Defendants testified to suspicious circumstances at the time of arrest, including the statement by an unidentified woman when inquiry was made as to Woods' whereabouts, "Barthy's not here." Defendants concede they made no effort at any time to independently investigate any of the information furnished by defendant but relied entirely upon NCIC information and the circumstances existing at the time of arrest. The evidence fairly presented disputed issues of material fact for submission to the jury.

█ The first issue raised by plaintiff is that the trial judge made prejudicial and erroneous statements of the law in the presence of the jury on more than one occasion

---

**3.** The response included Date of Birth: 1/01/52; Race: Black; Sex: Male.

**4.** The warrant is styled: *State of Tennessee v. John C. Woods, Jr., Fugitive from Arizona*, and in the body of the warrant the defendant is identified as Barthoomen Woods in four places and in the final blank on the warrant the defendant is referred to as Barthoomen (John) Woods.

during the trial. To support this contention, plaintiff cites two statements of the trial judge in the course of the trial, in the presence of the jury, to the effect that the only question the court could charge was whether the defendants had probable cause to arrest and plaintiff particularly takes issue with the opening statement in the judge's instructions to the jury:

> The only question for your determination is whether the officers had reasonable cause, that is cause that would give an ordinary prudent officer grounds to believe that a felony had been committed or probably had been committed and *have reasonable grounds that this Plaintiff may have committed the felony.* If they had those grounds, they had a right to make that arrest; if they didn't, they didn't. It's just that simple. That's the issue. [Emphasis supplied.]

The phrase "may have committed the felony" connotes a possibility, as opposed to a probability, that plaintiff committed the felony. The law holds arresting officers to a higher standard than proposed by the stated charge. The standard was established in the early case of *Eanes v. State*, 25 Tenn. 53 (1845): the Supreme Court on page 54 stated the standard to be:

> The liberty of the citizen is so highly regarded that the officer arresting a supposed felon, without warrant, must act in good faith, *and upon grounds of probable suspicion that the person to be arrested is the actual felon.*[5] [Emphasis supplied.]

The standard entitling an officer to make a privileged arrest without a warrant is codified in *T.C.A.*, § 40–803, which states, in part:

> An officer may, without a warrant, arrest a person:
>
> .    .    .    .    .
>
> (4) On a charge made, upon reasonable cause, of the commission of a felony by the person arrested.

The judge's charge contains this statute as well as *T.C.A.*, § 40–1004,[6] and other correct statements on the issue but we conclude the judge's charge on the fundamental issue, as emphasized, was incorrect and couched in language which would mislead the jury. *See Rule v. Empire Gas Corp.*, 563 S.W.2d 551 at 554 (Tenn.1978).

The second issue is that the trial judge refused to charge the jury the applicable law of the case submitted by plaintiff. The denied, requested instructions are:

> An officer must act prudently, reasonably, and use ordinary care in making arrests, including the ascertainment that the right person is being arrested.
>
> An officer who arrests the wrong person is liable if he fails to take proper precautions to ascertain the right person, or if he refuses information offered that would have disclosed his mistake, or if he detained the person an undue length of time without taking proper steps to establish his identity.

Defendants contend that special requests were adequately covered in the general

---

**5.** The editors of *Restatement of Law*, Second, Torts 2d, § 119, Comment j., state where a felony has in fact been committed, the officer is not required to believe the other is guilty of the felony—"It is enough that the circumstances which the actor knows or reasonably believes to exist are such as to create a reasonable belief that there is a likelihood that the other has committed the felony." P. 197.

The U. S. Supreme Court has expressed the arresting officer's role thusly:

> Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.

*Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). (95 S.Ct. at page 862.)

**6.** 40–1004. *Arrest without warrant for felony in another state.*—The arrest of a person may be lawfully made also by an officer or a private citizen without a warrant upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one (1) year; but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in § 40–1003; and thereafter his answer shall be heard as if he had been arrested on a warrant.

charge and point out that the court charged the jury that the officers must have had "reasonable grounds", "reasonable cause", "reasonable information", "probable suspicion", and "a reasonable basis for the belief that the accused plaintiff had committed the felony charged". However, the instructions do not specifically charge the officers' duty under the plaintiff's theory of the case; *see Rule, supra.*

On the issue of mistaken identity, our most recently reported case, *State ex rel. Anderson v. Evatt,* 63 Tenn.App. 322, 471 S.W.2d 949 (1971), states (pages 324 and 950):

> While there is authority in other states to support appellants' insistence, we think the better principles and greater weight of authority is, as the trial court charged the jury, that an officer must act prudently, reasonably and use ordinary care in making arrests, including the ascertainment that the right person is being arrested. [Citations omitted.]

Where the defense of probable cause is asserted, the standard of care required of an arresting officer is succinctly stated in *Travis v. Bacherig,* 7 Tenn.App. 638 (1928), at 643:

> The defense of probable cause for false arrest must be made in good faith. It is obvious that what constitutes reasonable grounds of suspicion must depend upon the facts and circumstances of the particular case; but those facts and circumstances should be such as would justify a careful and prudent person, acting circumspectly in his belief. It is the duty of the person making an arrest to take precaution against arresting an innocent person, and this requires the making of such investigation as the circumstances permit.

The circumstances under which he must act should be such as any reasonable person acting without passion or prejudice, would have fairly suspected that the plaintiff committed the crime or was implicated in it.[7]

Defendants argue that as a matter of law they had no duty to make any independent investigation of plaintiff's claim of innocence and rely on *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and quote from the opinion at page 2691. The opinion holds that a state action of an arrest without an independent investigation of the guilt of the accused, did not amount to constitutional violation so as to state a cause of action under 42 U.S.C., § 1983; nevertheless, the Court noted that the conduct of the arresting officer in that case would probably be actionable in tort.[8]

■ As to the second issue, the trial court was required to charge the jury with respect to the theories of the parties, including the law applicable to mistaken identity. *See Street v. Calvert,* 541 S.W.2d 576, 584 (Tenn.1976); *Richard v. Parks,* 19 Tenn. App. 615, 93 S.W.2d 639 (1935).

The final issue raised is whether the trial court should have directed a verdict for the plaintiff on the issue of liability where defendants relied solely on computer data and admitted they made no investigation of other available information to determine if plaintiff was, in fact, the party accused in Arizona.

■ Plaintiff did not move for a directed verdict. Since the issue was not raised before the trial judge, plaintiff may not raise the issue on appeal. Rule 3, Tennessee Rules of Appellate Procedure; *Har-*

---

7. The prudent person rule was reaffirmed in *Goines v. State,* 572 S.W.2d 644 (Tenn.1978).

8. The majority opinion in *Baker,* at page 2695, states: .

> Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law.

Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

For an interesting discussion of the risk of misidentification based upon NCIC computer reports, *see* 99 S.Ct., p. 2700, of the dissenting opinion.

*rison v. Schrader*, 569 S.W.2d 822 (Tenn. 1978); *Dorrier v. Dark*, 537 S.W.2d 888 (Tenn.1976). The record, however, would not support plaintiff's position if the issue was properly before the Court. The issue of probable cause for arrest is one of law for the Court where the facts are undisputed but, where the evidence is conflicting, it is a mixed question of law or fact. *See City of Nome v. Ailak*, 570 P.2d 162 (Alaska 1977); *Stienbaugh v. Payless Drug Store, Inc.*, 75 N.M. 118, 401 P.2d 104 (1965); *Robinson v. City and County of San Francisco*, 41 Cal.App.3d 334, 116 Cal.Rptr. 125 (1974).

The first two issues are resolved in favor of the plaintiff and the final issue in favor of defendants.

The jury verdict is reversed on the basis of the Court's instructions and the cause remanded to the trial court for a new trial consistent with the determinations made herein.

The costs incident to the appeal are assessed against defendants-appellees.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.