## J. C. Penney Company, Inc. *v.* Cox

No. 42501          January 14, 1963          148 So. 2d 679

*M. M. Roberts,* Hattiesburg, for appellant.

*Howard L. Patterson, Jr., Francis T. Zachary,* Hattiesburg, for appellee.

McELROY, J.

This is an appeal from the Circuit Court of Forrest County, Mississippi, from a judgment in favor of the appellee against the appellant in the sum of $2,000.

This suit upon which the judgment was awarded was based upon allegations by the appellee to the effect that the assistant manager of the appellant's store in Hattiesburg, while acting under such employment and within the scope of his authority, did falsely, publicly, and maliciously accuse the appellee of having stolen from the appellant corporation a jar of deodorant or some other similar article; that the appellee was subject to false arrest, detention, imprisonment, search of her person and her possession by the said assistant manager of the appellant corporation, who was at the time acting in the scope of his employment; and that the appellee was subjected to great indignities, humiliation, and disgrace by being compelled to empty the contents of her purse and a paper sack which she was carrying, on the inside steps of the said building in full view of all the clerks and other employees of the appellant's store, as well as many shoppers who were in the vicinity at that time.

In the appellant's answer they admit that the appellee did not steal a jar of deodorant or anything else from the appellant; that all of that had and done by the defendants or its agents and employees on the occasion complained of were had and done in good faith and upon reasonable grounds therefor under the laws of Mississippi, and because thereof the plaintiff is entitled to

recover nothing whatsoever from the defendant. Thus their defense is that the management of the store is privileged under and by the 1958 Laws of Mississippi, which is Chapter 268 of the General Laws, and rely on Section 4 thereof, which is as follows:

"Section 4. If any person shall commit or attempt to commit the offense of shoplifting, as defined herein, or if any person shall willfully conceal upon his person or otherwise any unpurchased goods, wares or merchandise held or owned by any store or mercantile establishment, the merchant or any employee thereof or any peace or police officer, acting in good faith and upon probable cause based upon reasonable grounds therefor, may question such person, in a reasonable manner for the purpose of ascertaining whether or not such person is guilty of shoplifting as defined herein. Such questioning of a person by a merchant, merchant's employee or peace or police officer shall not render such merchant, merchant's employee or peace or police officer civilly liable for slander, false arrest, false imprisonment, malicious prosecution, unlawful detention or otherwise in any case where such merchant, merchant's employee or peace or police officer acts in good faith and upon reasonable grounds to believe that the person questioned is committing or attempting to commit the crime of shoplifting as defined in this act." Miss. Laws of 1958, Ch. 268 Sec. 4, now Sec. 2374-04, Code 1942.

This same act defines shoplifting which is nothing more than the statutory or common law petty larceny or larceny in a store.

The facts are that Mrs. Della Cox on April 1, 1961 was regularly employed as a baby-sitter. She had come to Hattiesburg to visit her sister by way of Trailway. She arrived around two o'clock and went immediately to Penney's store to do some shopping. As she came in front she looked over at the beads, and they had cosmetics and lipsticks. She had a pair of shoes in a

paper bag; she was going to buy some material when she saw the display of deodorants and lipsticks, and she stopped, thinking that it was a sale and she would find a bargain. This was at the front of the store. Then Mr. Maduzia, the assistant manager, came up and caught the appellee by the arm and demanded her to pay him for the deodorant that she had in a paper bag and in her purse. This all occurred within the store building, on the steps about three steps up, in view of all the sales people and customers in the store. He demanded that she open her purse and then the bag and display everything there on the steps, which she did, and demanded that she pay for what she had in the bag that didn't belong to her. "He just told me to pay for it and to let him see what I had, first in the purse and then in the bag. I was never so humiliated in my life. I had never stolen anything and I just wanted to cry and just went all to pieces. It really made me sick." She had never been accused before of being a shoplifter. After the manager was satisfied that she didn't have what he was looking for, he then admitted that he had made a mistake.

No one testified that they saw the appellee take anything. The only testimony was to the effect that they suspected that something had been possibly taken, and that Mrs. Cox was the person pointed out to the manager. One of the salesladies said she acted a little suspicious when she walked up to her to try to sell her something, and stated that some other person in the store had told her, "I think she put something in her bag." She did not see Mrs. Cox take anything, and stated, "I told her I thought that she took something." All this was related to another clerk in the store who was the one who conveyed the report to the manager. The second saleslady made this report to the manager.

The assignment of error assigned that the trial court should have sustained the motion for a directed verdict

and given the requested peremptory instruction that the defendant was entitled to judgment under the pleadings and proof that the trial court improperly interpreted Section 4 of Chapter 268, Laws of 1958, as disclosed by the instruction refused to the appellant and granted appellee.

The question before the court is whether, under Chapter 268 above, the manager of the store, in taking hold of the appellee's arm and stopping her on the stairway and proceeding to accuse her in a voice heard by the occupants of the store and the salespeople of having stolen a jar of deodorant or some similar article from the counter, was justified in what he did.

We do not believe that he was. We believe from the evidence the jury was warranted in finding that the qualified privilege, claimed by the defendant through his employee, relating to plaintiff had been exceeded.

Historically, in law of libel and slander, a showing of malice on the part of the communicator was considered an essential element of the plaintiff's cause of action, but the courts developed a fiction that the speaking of certain words raises a presumption of malice on the part of the speaker. However, a person who publishes words which would otherwise be defamatory may be excused from liability because of privilege. There are two types of privileges — absolute and qualified or conditional. If an absolute privilege is shown it is generally held that the communicator may not be liable for the words spoken whether maliciously or not, but if a conditional or qualified privilege is relied on by the speaker, such privilege may be exceeded or abused so that its protection may be lost.

(Hn 1) A qualifiedly or conditionally privileged communication is one made in good faith on any subject matter on which the person communicating has an interest or in reference to which he has a duty to protect to a person having a corresponding interest or duty,

even though it contained matters, which, without this privilege, would be actionable, and although the duty is not a legal one, but only moral and social duty of imperfect obligation. Communications have been held qualified privilege when made in good faith to proper parties relative to a store manager to a customer, or a store manager to an employee. In considering a qualified privilege, a clear understanding of the distinction between the terms of occasion of the privilege and previous communication is necessary. **(Hn 2)** An occasion of privilege arises when the evidence establishes circumstances which the law says supported a duty to make a statement of fact honestly believed to be true. A privileged communication is a statement made in good faith with an honest intent to perform a duty, on an occasion of privilege. Thus it is possible that a statement made on occasion of privilege may not be a privileged communication. Libel and Slander — Exceeding a Conditional or Qualified Privilege, Miss. L. J. 18 (1946-47), p. 319.

In the case of Montgomery Ward & Company, Inc., et al. v. Skinner, 25 So. 2d 572, decided in 1946, money was found underneath a plaque near the cash register of defendant's store by one of five clerks working there, and the matter was reported to the assistant manager. During the working hours of the following day, three of the department clerks, including the plaintiff, were addressed collectively by the assistant manager near the cash register in the department, at which time the assistant manager stated that one of the three had trifled with the money, and that all three were fired with blights on their record. The plaintiff brought action for slander. At the trial the assistant manager admitted that he thought the act was one involving carelessness; evidence was introduced to show that the assistant manager spoke in a loud voice, that he was angry, and that there were customers present in the department at the time the

statement was made. After defendant's motion for a directed verdict was refused in the lower court, the case was submitted to the jury, who returned a verdict for the plaintiff. The Court held that the evidence warranted a finding by the jury, that the conditional privilege claimed by the defendant through his employer-employee relationship with the plaintiff had been exceeded.

In the case of Morgan, et al. vs. Loyacomo, 190 Miss. 656, 1 So. 2d 510, the appellee purchased in one of the stores on the day in question an article of ladies' underwear, and, having paid for it, departed from the store. The manager of the store witnessed the purchase. A circumstance connected with the purchase caused the manager to suspect without any substantial ground that the appellee had taken away two garments, but had paid for only one. The customer left the store, but the manager followed her and, about a block away, in the presence of several persons, he called to the appellee stating that he was obliged to investigate whether she had taken two articles while paying for only one. He forcibly seized the package from under her arm, opened it, examined it, and exhibited the contents in the presence of third persons. He found that he was in error. The question there was if the appellant, by his actions, did not constitute an assault and battery, and it was held that it is not necessary to touch the plaintiff's body, or even his clothing; knocking or snatching anything from the plaintiff's hands, or touching anything connected with his person when done in a rude or insolent manner, is sufficient. Scotts-Burr Stores, et al. v. Edgar, 165 So. 623, (Miss.)

The shoplifting statute above quoted states: ". . . the merchant or any employee . . . acting in good faith and upon probable cause based upon reasonable grounds therefor, may question such person, in a reasonable manner for the purpose of ascertaining . . ."

In Collyer V. S. H. Kress Co., 54 P. 2d, p. 20 (Cal.), the California court stated: ''What is probable cause, as has been often announced, is not a question of fact for the jury, but one of law for the court, to be decided in accordance with the circumstances at the time of the detention, unhampered by the outcome of the charge against the plaintiff of the public offense or by the conclusions of the trial court.''

(Hn 3) The authorities hold that where a person has a reasonable ground based upon probable cause to believe another is stealing his property, as distinguished from those where the offense has been completed, he is justified in detaining the suspect in a reasonable manner for a reasonable length of time, for the purpose of an investigation. A person under the law has a right to protect his own property from injury, but at the same time he must have probable cause to believe that his property is really going to be injured or taken. Probable cause will then become a defense, provided of course that the detention was reasonable.

(Hn 4) From the evidence in this case, no one saw the defendant take anything. In this day and time, in our ways of commerce in our mercantile business, people go through the stores, pick up goods, put them in containers, and move them about. Probable cause cannot be based on mere belief of a third person that somebody did or did not do something. None of the employees even saw her so much as touch an article, and the only evidence here that would connect the defendant in any way is that some one in the store told one of the clerks that they believed that she had stolen something. In other words, a person must have reasonable grounds to believe that another is stealing his property, as distinguished from those where the offense has been completed, that he is justified in detaining the suspect for a reasonable length of time for the purpose of investigating in a reasonable manner. We do not believe that

there is sufficient evidence here to raise this case to a probable cause that would justify the manager here to make the investigation in the manner in which he made it. The investigation should be based on more than mere conjecture or suspicion. It must be grounded on some definite information from some person that saw enough to justify the manager's belief that a theft had been made, and that a person was guilty of shoplifting.

Shoplifting is not uncommon in the merchandising field, and some rules and regulations must exist for the protection of the merchant; public policy makes it necessary to provide for the protection of merchants against shoplifting. The legislature certainly had this in mind when passing Chap. 268 of the General Laws of Mississippi in 1958. The protection of merchants from shoplifters would not under any circumstances be justification for the usurpation of the rights and freedoms of the individual citizens of this state and country. The evils of shoplifting are probably great in this country at this time. Taking care of the interests of the merchants would not justify giving them complete power and authority to infringe upon the rights of their customers and allow the merchants, without regard to the feelings of the customers, to require them to submit to certain humiliations and disgrace of being indiscriminately accused of stealing or to be subjected to search upon the mere whim of the merchant or his employees. The statute clearly states: "If any person shall commit or attempt to commit the offense of shoplifting as defined herein, or if any person shall willfully conceal upon his person or otherwise any unpurchased goods, wares or merchandise . . . the merchant or any employee thereof or any peace or police officer, acting in good faith and upon probable cause based upon reasonable grounds therefor, may question such person in a reasonable manner for the purpose of ascertaining whether

or not such person is guilty of shoplifting as defined herein.''

(Hn 5) Therefore, under the statute to justify qualified privilege as a defense of ascertaining whether such person is guilty of shoplifting as defined in this act, there must be sufficient evidence to show probable cause. The burden of proof is on the one who asserts the right to accost a customer to show sufficient evidence that the accused person willfully concealed upon his person or otherwise any unpurchased goods or merchandise owned by the mercantile establishment. This evidence must be sufficient to justify a probable cause based upon reasonable ground before he may question such person, and then only in a reasonable manner.

(Hn 6) From the evidence, we believe that the appellant exceeded their authority in this case. Not only were they not justified in their defense of acting in good faith and upon probable cause, but that the method used was unreasonable.

The case of Scott-Burr Stores Corp., et al. v. Edgar, 177 So. 766, 181 Miss. 486, may appear to be similar to this case, in that it involved a case where the store manager stopped a customer and falsely accused him of having stolen a package of razor blades. However, upon an examination of the opinion of the court it will be noted that the facts differ from this case in several materially important aspects. In the Scott-Burr case the manager stopped the customer when he was attempting to leave the store, and led him to the rear of the building, behind a luncheonette counter, before accusing him. In this case the testimony is to the effect that the manager caught the young lady by the arms, stopped her on the third step, in view of many customers, and demanded that she make display of unpaid-for merchandise in her handbag and in her sack, and would not release her until he was fully satisfied that she did not have the merchandise in question. In other words,

the qualified privilege under the statute does not give the merchant the right to embarrass or harass individuals suspected, in public view of every one, in a rude manner.

In the case of Furr v. Speed, 21 So. 562, 74 Miss. 423, the Court stated: "The authors on the subject of slanders concur that no general rule can be laid down by which to determine what words or phrases will support an action for libel or slander; so much depends on the attending circumstances of each case."

(Hn 7) We are of the opinion that there is no reason to reverse the case as to the instructions, which when read and considered together amply and properly instruct the jury; and for the further reason that Sec. 4, Ch. 268 of the General Laws of Mississippi (1958), requires reasonableness in the actions of a merchant or employees.

(Hn 8) The appellant complains that the amount of the damages allowed is excessive. Pilfering in one form or another from large retail stores presents a serious problem for the management of such establishments. This is a matter of current knowledge, and our attention has been drawn to it in several cases that have been in this Court. Our attitude toward the management in this matter has therefore been lenient rather than harsh, as evidenced by what was done in many cases considered by our Court. From the evidence in this case we realize that the Court must not tolerate conduct such as shown; and upon the whole record we are not able to say with confidence that the amount of the damage allowed is excessive. The case is therefore affirmed.

Affirmed.

*Lee, P. J., and Gillespie, Rodgers, and Jones, JJ.,* concur.