MARIO MENDEZ vs. M.S. WALKER, INC., & another.[1]

No. 87-140.

Suffolk. January 19, 1988. — October 4, 1988.

Present: GRANT, CUTTER, & ARMSTRONG, JJ.

*Libel and Slander. Practice, Civil,* Failure to make objection.

At the trial of a defamation action brought by a former employee, who had been fired for theft, against his employer, the evidence warranted a finding that the conduct of the defendant's plant manager in informing the plaintiff's foreman and his shop steward of the plaintiff's discharge and the reason for it without an effort to verify the truth of the charge, in circumstances where verification was practical, amounted to a reckless disregard for the truth, resulting in loss of the defendant's conditional privilege to disclose the information [433-435].

At the trial of a defamation action brought by a former employee, who had been fired for theft, against his corporate employer and its president, a verdict in favor of the individual defendant was not inconsistent with a verdict against the corporate defendant, where it was open to the jury to conclude that the instructions which the president gave to the corporation's plant manager ("[T]ake care of it"), after observing the plaintiff's suspicious conduct, did not preclude the manager from investigating the truth of the charge, which he failed to do, before he disclosed it to the plaintiff's foreman and shop steward. [435]

Contentions not brought to the attention of the judge at the trial of a defamation action could not properly be made on appeal to this court. [435]

CIVIL ACTION commenced in the Superior Court Department on July 17, 1980.

The case was tried before *Guy Volterra,* J.

*David M. Wang (John C. Ottenberg* with him) for M.S. Walker, Inc.

*Mark M. Freeman* for the plaintiff.

---

[1] Harvey Allen.

ARMSTRONG, J.   The plaintiff (Mendez) is a former employee of the defendant M.S. Walker, Inc., a distributor of alcoholic beverages. After being fired for theft, Mendez recovered a judgment for defamation against his former employer. M.S. Walker, Inc., has appealed, raising the principal contention that the jury's verdicts were inconsistent and should have been set aside for that reason.[2]

The complaint had two counts, both sounding in defamation, one against M.S. Walker, Inc., the other against Harvey Allen, its president. The testimony showed little or no dispute as to the following facts. Allen was driving his car past the M.S. Walker, Inc., plant one morning between 7:00 A.M. and 7:30 A.M., shortly before the plant opened for business. He saw Mendez, a janitor, loading a carton into the trunk of his (Mendez's) car. The carton was of a type used for M.S. Walker, Inc., merchandise. Allen did not stop but drove on to breakfast, returning to the plant later in the morning. He told Shea, his plant manager, that he had seen Mendez stealing liquor, describing the carton. He told Shea to "take care of the matter." Following a company policy of discharging an employee guilty of theft or drinking on the job, Shea fired Mendez. Mendez denied the theft and, at some time before he left the premises, went to Allen's office to protest his innocence. He invited Allen to look in his car and, indeed, his house. Allen declined. Shea had told Mendez's foreman as well as the shop steward about Mendez's discharge and the reason for it, and he told the payroll clerk to strike Mendez's name from the list of employees but did not disclose the reason.

The jury were instructed that the accusations of theft were as matter of law defamatory, that the occasions on which they were spoken were protected by a conditional privilege, and that the issue for them to decide was whether Allen or M.S. Walker, Inc., had abused the privilege. See *Ezekiel* v. *Jones Motor Co., Inc.*, 374 Mass. 382, 385 (1978). Abuse of the

---

[2] Mendez is content with his judgment against M.S. Walker, Inc.; he has appealed, however, from a judgment entered on the verdict for the defendant Allen in order to protect his right to a retrial against both defendants in the event that the judgment against M.S. Walker, Inc., should be reversed.

privilege, they were instructed, could consist of deliberate falsehoods or rash or reckless statements. "[T]he law does not protect one or give a qualified immunity if a defendant does not have reasonable grounds to believe that what he said was true, nor does the law protect a defamer who destroys the innocent reputation of a person without making any reasonable efforts or attempts to verify his statements." He charged that "a corporation may be held liable for damages where a defamatory statement is made by one of its agents acting in the course of [his] employment." The jury returned verdicts against M.S. Walker, Inc., but for Allen.

The judge ruled correctly that these verdicts were not irreconcilable. On the evidence and the judge's instructions, the jury could differentiate between the statement of Allen to Shea, the plant manager, and the statements of Shea to the shop steward and the foreman. We do not base this conclusion on the concept of overly broad dissemination of the allegation because it is reasonable to think that both recipients, occupying positions of sensitivity in employee relations, would normally be expected to be made privy to the basis for a discharge — particularly a sudden discharge — of an employee who had been with the company for several years. See *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 235-236 (1984); *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 94-95 (1987); Restatement (Second) of Torts §§ 596 comment c & 604 (1977). Compare *Galvin* v. *New York, N.H. & H. R.R.*, 341 Mass. 293, 297-298 (1960). Rather, we think that the evidence warranted a finding that broader dissemination of the charge against Mendez without an effort to verify its truth, in circumstances where verification was practical, amounted to "a reckless disregard of [Mendez's] rights and of the consequences that [might] result to him." *Gott* v. *Pulsifer*, 122 Mass. 235, 239 (1877).

The conditional privilege to disseminate a serious charge may be lost, not only by knowledge of its falsity, but also by reckless disregard whether it is true or not. *Tosti* v. *Ayik*, 386 Mass. 721, 726 (1982). Reckless disregard does not necessarily imply that the charge has a flimsy basis. Here, clearly, it did not. Recklessness can also be shown by a failure to verify in

circumstances where verification is practical and the matter is sufficiently weighty to call for safeguards against error. *Retailers Commercial Agency, Inc., petitioner*, 342 Mass. 515, 522 (1961). *Bratt* v. *International Bus. Mach. Corp.*, 392 Mass. 508, 514 & n.10 (1984). *DeRonde* v. *Gaytime Shops, Inc.*, 239 F.2d 735, 738-739 (2d Cir. 1956). *Southwest Drug Stores, Inc.* v. *Garner*, 195 So. 2d 837, 842 (Miss. 1967).

The jury could infer from the following circumstances that M.S. Walker, Inc., acting through Shea, had abused the conditional privilege. Mendez, as janitor, commenced his workday at 7:00 A.M., an hour before the plant opened for business. In his testimony he acknowledged putting a carton in his car. He claimed that it was an empty carton, that he had taken it from the waste bin to hold the tools in his trunk, and that he had invited Allen, in the presence of Shea, to search his trunk. The invitation was declined.[3]

Regardless of the invitation, the jury could properly conclude that Shea should have asked to inspect the trunk (Mendez's car was parked next to the loading bay) while the charge was fresh and an inspection potentially useful. Allen did not claim to have seen Mendez putting bottles in his trunk. He had seen a liquor carton and drawn an inference. That inference was susceptible — or so the jury, acting within its province, could conclude — of easy and relatively sure verification by an inspection of the trunk and the contents of the carton. A refusal to permit inspection would tend to confirm Allen's inference.[4]

---

[3] The evidence is conflicting as to when Mendez was told of his discharge. Shea testified that he told Mendez he was discharged shortly after leaving Allen's office and stated the reason. If true, there could have been a time gap before Mendez, in Allen's office, asked that the trunk be searched, a gap that might impair the potential probative value of a search. Mendez's testimony was that Shea asked him to come to Allen's office without disclosing the reason and it was there, in the presence of Allen and Shea, that he was told of his discharge and the reason for it. In either event, the evidence seems clear that neither Allen nor Shea showed any interest in listening to Mendez's side of the story.

[4] A finding of no carton would not be inconsistent with the inference of theft but would suggest further inquiry into whether Mendez had left the premises or had an opportunity to do so unobserved.

The jury could properly take the view that this modest effort at confirmation was called for by the seriousness of the charge and its probable consequences to Mendez. He was sixty-two years old and unskilled. He was predictably unlikely (and he was in fact unable) to find other work.

The verdict for Allen is not inconsistent with the jury's having taken that view of the case. Allen, without abusing the conditional privilege, could disclose his observation (and his inference therefrom) to his plant manager and leave any further investigation to him. The jury were not required to accept Shea's contention that his instructions were simply to discharge Mendez but could instead take the view — supported by certain testimony of Allen — that Shea's mandate to deal with the situation ("take care of it") had been broader and did not preclude the possibility of some investigation. A conclusion that the company, acting through its officers and employees, had a duty of verification before disseminating the charge does not mean that Allen himself was subject to that duty. He could leave the situation to his plant manager.

A contention is made by M.S. Walker, Inc., on appeal, that the judge erred in admitting evidence of Mendez's loss of income and instructing the jury that this could be taken into consideration in assessing damages. (The loss of income, it is argued, was the result of the discharge, not the result of the slander, and was not compensable because the discharge was not unlawful.) This contention was not brought to the attention of the trial judge. The evidence was not objected to in this respect, nor were the instructions to the jury. The contention may not be made for the first time in this court. *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87-88 (1977). There is no suggestion that the jury were permitted to assess punitive damages. See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 860-861 (1975).

*Judgment affirmed.*